Michael Rodenbaugh (SBN 179059)
Jonathan Frost (SBN 273189)
Meghan Gleeson (SBN 353156)
RODENBAUGH LAW
548 Market Street, Box 55819
San Francisco, CA 94104
Phone: (415) 738-8087
Email: mike@rodenbaugh.com
        jonathan@rodenbaugh.com
        meghan@rodenbaugh.com
        docket@rodenbaugh.com

Attorneys for Plaintiff
CORY LIGUORE

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORY LIGUORE,<br><br>Plaintiffs,<br><br>v.<br><br>KENDALL SIMMONS and 7+6 MANAGEMENT, LLC,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT FOR**<br>1. Cyberpiracy Protection for Individuals (15 U.S.C. § 8131(1)(A))<br>2. Cyber Piracy (Cal. Bus. & Prof. Code § 17525)<br>3. Civil Harassment (Cal. Civ. Code § 1708.7)<br>4. Disorderly Conduct - Cyber Exploitation (Cal. Penal Code § 647)<br>5. Intentional Infliction of Emotional Distress<br>6. Negligent Infliction of Emotional Distress<br>7. Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)<br><br>**JURY TRIAL DEMANDED**<br>Date: March 15, 2024 |

For their Complaint against the KENDALL SIMMONS and 7+6 MANAGEMENT, LLC ("Defendants" or "Mr. Simmons"), Plaintiff, CORY LIGUORE ("Plaintiff" or "Mr. Liguore"), allege the following:

## NATURE OF ACTION

1. Plaintiffs bring this action for economic, non-economic, compensatory, injunctive relief, and punitive damages on substantive claims for violation of Cyberpiracy Protection for Individuals under the Anti-Cybersquatting Consumer Protection Act ("ACPA") (15 U.S.C. § 8131(1)(A)), Cyber Piracy (Cal. Bus. & Prof. Code § 17525), Civil Harassment (Cal. Civ. Code § 1708.7), Disorderly Conduct (Cal. Penal Code § 647), intentional infliction of emotional distress, and negligent infliction of emotional distress, civil harassment and Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.) incurred by the Defendants' unlawful acts resulting in the unauthorized and distressing use of Plaintiff's likeness and identification on a fraudulent impersonation website.

## THE PARTIES

1. The Plaintiff, CORY LIGUORE ("Plaintiff" or "Mr. Liguore"), is a resident of Pleasanton, California.

2. The Plaintiff has previously owned and used an account on a social video chat and dating application, Fuzz, on which Plaintiff would only live stream to public audiences or to private individuals by invitation only. The Plaintiff has also owned and used an educational YouTube channel under his real name.

3. The Defendants KENDALL SIMMONS and 7+6 MANAGEMENT, LLC (collectively "Defendants") are an individual KENDALL SIMMONS who, on information and belief from investigative efforts conducted thus far in this suit, to resides in Villa Park, Illinois, and controls and is the primary decision-maker for the company 7+6 MANAGEMENT, LLC. Mr. Simmons is the individual responsible for the use and public dissemination of the Plaintiff's name, likeness, intimate photos from the Plaintiff's Fuzz, and personal resume information from the Plaintiff's

1  LinkedIn account and YouTube channel, without the Plaintiff's notice or consent, to create websites wherein Defendants impersonates Mr. Liguore and posts intimate photos of Mr. Liguore for any person in the public to view.  On information and belief, based upon preliminary investigation, the company either does not truly exist (at least not as an Illinois or Delaware LLC), or if it does exist then it has profited from Mr. Simmons' activities alleged herein.

4.  The Defendants are collectively responsible for using Mr. Liguore's name as the domain name on which the fraudulent activities occurred, <coryliguore.com> (the "Domain"), resulting in Mr. Liguore being dismissed by his employer on November 13, 2023, under his employer's belief and assertion that Mr. Liguore had created the Domain and posted intimate photos of Mr. Liguore for public viewing. The day that Mr. Liguore was fired was also the first day that he became aware of any use of his name, intimate photos, or personal information on any website by Defendants.

5.  Plaintiff has suffered severe emotional and physical stress as result of the publication and discovery of the website, which violates his privacy and from his being fired by his employer which relied on the Domain and website as being published by Mr. Liguore rather than the responsible Defendants.

**JURISDICTION AND VENUE**

6.  This Court has subject matter jurisdiction over the Plaintiff's claims for violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA") under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a).

7.  This Court has diversity subject matter jurisdiction under 28 U.S.C. §§ 1332 because, on information and belief, this action is between citizens of different states and the monetary amount in controversy exceeds $75,000, exclusive of interest and costs.

8.  The Court has supplemental jurisdiction over the common law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the state claims and federal claims are so related that they form part of the same case or controversy.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial parts of the events giving rise to Plaintiff's claims in this suit occurred in the Northern District of California.

## GENERAL ALLEGATIONS

10. In early 2018, Plaintiff CORY LIGUORE owned and used an account, on a social video chat and dating application, Fuzz, on which Plaintiff would only live stream to public audiences or to private individuals by invitation only. The Fuzz Application was described and purportedly designed to be a secure application on which no media or information could be recorded or saved to users' personal devices.

11. The Defendant KENDALL SIMMONS contacted Mr. Liguore through the private chat function on the Fuzz application in the summer of 2018, asking about the possibility of being Mr. Liguore's roommate. Mr. Liguore refused the Defendant's request due to their being strangers at the time. Despite Mr. Liguore's rejection, the Defendant insisted that Mr. Liguore provide his personal cell phone number, and in response and fear of further uncomfortable requests, Mr. Liguore ceased any private communications with the Defendant.

12. The Fuzz application was later removed from the application store and all services ceased to all accounts and users at the end of 2018.

13. On October 30, 2018, Plaintiff started and began publishing, on his YouTube channel, educational and career-related videos for audiences who felt stuck in their jobs and desired to improve their work-related skills and achieve financial freedom.

14. On information and belief, Defendant SIMMONS persisted in his pursuit of the Plaintiff's personal information and social media accounts by leaving public comments, as the account holder named "@yfroggy13", on the Plaintiff's YouTube Channel referencing the public and private content that Plaintiff had shared on the Fuzz application, content which was wholly unrelated to the content of the Plaintiff's YouTube Channel used for educational and career-related purposes.

15. Later in November of 2018, Mr. Liguore deleted the educational and career-related YouTube channel and began a new channel. Around the same time, Mr. Liguore blocked the YouTube account belonging to the Defendant "@yfroggy13" from the new YouTube Channel that Mr. Liguore started, so as to avoid the Defendant finding the new account. Mr. Liguore also blocked the Defendant's two known Instagram accounts from seeing or accessing any content from Mr. Liguore's personal Instagram account at this time.

16. On October 21, 2023, Defendants KENDALL SIMMONS and 7+6 MANAGEMENT, LLC, registered the domain name <coryliguore.com> and published on the domain a website containing information from Mr. Liguore's resume and intimate content that was screenshot or screen recorded from his long-inactive Fuzz application profile, without Mr. Liguore's knowledge or consent. The website represents Mr. Liguore as the publisher and host of the domain name, which was and is false. The meta description provided in the search results of Mr. Liguore's name started by producing the results "Cory Liguore slut."

17. On November 13, 2023, Mr. Liguore was given notice of termination by his employer, who cited the content displayed on the domain name <coryliguore.com> as the reason for his termination. The meeting with his employer regarding Mr. Liguore's termination was the first time he was made aware of the domain name and its content. To Mr. Liguore's dismay, the Domain appeared as the first online information when any person searched Microsoft Bing for Mr. Liguore's name, and as the fourth online listing when any person searched his name on Google.

18. On November 16, 2023, Mr. Liguore filed a police report with the Pleasanton Police Department under case #2023-00035309 and Detective Furphy was assigned.

19. On November 18, 2023, Mr. Liguore filed a request with Google to remove the domain name and website from search results relating to his name, because it was using his name and information without his knowledge or consent. Google agreed with Mr. Liguore's request, and that the website and Domain were violating his

rights, resulting in the website being removed from the search results connected to his name.

20. On November 28, 2023, Detective Furphy with the Pleasanton Police Department was able to communicate and convince the Domain registrar and webhost -- Wix.com, Ltd. -- to take the website down and cease domain services.

21. On December 6, 2023, in response to a police warrant, Wix.com, Ltd. identified the owner and creator of the Domain <coryliguore.com> as the Defendant KENDALL SIMMONS, from Villa Park, Illinois.

22. On December 20, 2023, the Defendants then launched another website, publishing more information than had been published previously from Mr. Liguore's resume, publishing the same intimate screenshot content from Mr. Liguore's long-ago deleted Fuzz account, and publishing accessible links to all of Mr. Liguore's personal social media accounts.

23. On December 21, 2023, Sargent Krupp from the Villa Park Police Department was assigned to the case in Illinois. However, information revealed later that the Defendant SIMMONS did not live in Villa Park Police Department jurisdiction and the case was reassigned to the DuPage County Sheriff's Office.

24. On January 3, 2024, Detective Kenny from the DuPage Sheriff's Office opened the case #SOP24000283. Detective Kenny informed Mr. Liguore that the case was pursuable as disorderly conduct under 720 Ill. Comp. Stat. Ann. 5/26-1. However, their District Attorney's office was not willing to pursue the case any further. Detective Kenny said the DuPage Sherriff's Department would cooperate and interview the Defendant SIMMONS if the California District Attorney's Office and/or Police Department elected to pursue any criminal charges. However, the California Police Department and District Attorney's Office were not willing to pursue any criminal investigation or charges, and consequently the criminal cases were all closed.

25. On January 9, 2024, Mr. Liguore filed a request with Microsoft Bing to remove the Domain website from search results relating to his name, because it was using his name and information without his knowledge or consent. Microsoft Bing agreed with Mr. Liguore's request, finding that the website and Domain were violating his rights, and resulting in the website being removed from the Bing search results connected to his name.

26. On January 9, 2024, Mr. Liguore went to the District Attorney to meet Inspector Cassandra Pickett and plead for help to get the Police Departments to pursue charges for the alleged crimes committed against him.

27. In January of 2024, Mr. Liguore changed and updated all his social media accounts and usernames, including but not limited to Facebook, Instagram, and Twitter, so as not to be connected to any websites operated by the Defendants. However, the Defendants persisted in finding and publishing Mr. Liguore's updated social media accounts and usernames on the Domain and associated website. The Defendants added Mr. Liguore's updated resume information and statements pertaining to Mr. Liguore's current search for new employment and shared that information on the website as well.

28. On January 31, 2024, Inspector Pickett recommended to Mr. Liguore to reach out to the Federal Bureau of Investigations to file a Complaint for an Internet Crime. Inspector Pickett shared the Complaint form filing link to Mr. Liguore, which Mr. Liguore promptly filled out and submitted.

29. To date, no information, update, or response to Mr. Liguore's Complaint filed with the Federal Bureau of Investigations has been received.

## CLAIMS

## COUNT ONE

**Cyberpiracy Protection for Individuals (15 U.S.C. § 8131(1)(A))**

30. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

31. Defendants intentionally registered the Domain so as to be identical to the Plaintiff's full name.

32. Plaintiff has never provided authorization to any of the Defendants to use the Plaintiff's name or identity on the Defendants' websites, within the Domain, or in any other capacity.

33. Defendants have persisted to re-create websites at the Domain despite the removal from Google and Microsoft Bing, in an ongoing and egregious effort to harass the Plaintiff and cause economic and emotional suffering, including but not limited to, the loss of employment.

34. Defendants have intentionally targeted the Plaintiff so as to gain financial benefit from the sale of the Domain to the Plaintiff and/or to otherwise financially benefit themselves.

35. As a direct and proximate result, Plaintiff has suffered extensive and irreparable harm, including without limitation great economic expense and stress, and severe emotional and physical harm as a result of the Defendants' targeted abuse of Plaintiff's identity, likeness and private information.

## COUNT TWO

### Cyber Piracy (Cal. Bus. & Prof. Code § 17525)

36. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

37. Defendants intentionally registered the Domain so as to be identical to the Plaintiff's full name.

38. Defendants registered the Domain, using the Plaintiff's full name, for the purpose of luring internet visitors attempting to reach and/or find information about Plaintiff, to the intimate content containing the Plaintiff's name and likeness, without the Plaintiff's consent or notice.

39. Defendants knowingly and intentionally misrepresent their identifies as the true owners and creators of the Domain, associated website and/or their true

locations, by using the Plaintiff's name and personal information within publicly available information.

40. Plaintiff has never provided authorization to any of the Defendants to use the Plaintiff's information or likeness on the Defendants' websites, within the Domain, or in any other capacity.

41. Defendants purposefully created and uploaded intimate images onto their websites, in order to harm the Plaintiff's career and reputation, without regard to the Plaintiff's economic stability or professional standing.

42. As a direct and proximate result, Plaintiff has suffered extensive and irreparable harm, including without limitation great economic expense and stress, and severe emotional and physical harm as a result of the Defendants' targeted abuse of Plaintiff's identity, likeness and private information.

## COUNT THREE

### Civil Harassment (Cal. Civ. Code § 1708.7)

43. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

44. Defendants have engaged in a repeated and insistent pattern of creating the Domain and associated websites wherein the Defendants intentionally have used the Plaintiff's name, likeness and intimate media to harm the Plaintiff. Any reasonable person would feel that such targeted conduct was intentionally harassing.

45. Plaintiff reasonably fears for his personal safety, and/or that of his immediate family, given the Defendants' persistent campaign of investigation and harassment targeting Plaintiff.  Any reasonable person would feel the same.

46. Plaintiff has suffered severe and extreme emotional distress from the discovery of the Domain and the websites' content, resulting in the loss of employment which cited the Domain and website content as the justification for his termination.

//
//

## COUNT FOUR

### Disorderly Conduct – Cyber Exploitation (Cal. Penal Code § 647)

47. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

48. Defendants knowingly and intentionally registered the Domain so as to be identical to the Plaintiff's full name without the Plaintiff's notice or consent to distribute screenshots and screen recordings of the Plaintiff from the Fuzz Application, which was described and designed to be a secure application on which no media or information could be recorded or saved to users' personal devices.

49. Defendants persisted to deleting the Domain and content after the first version of the Domain was removed from the search results on Google, to then create a new version of the Domain under <coryliguore.com>, using the Plaintiff's name again and sharing screenshots of the same intimate videos and photos depicting the Plaintiff.

50. Defendants purposefully used information from the Plaintiff's LinkedIn account and shared that information in conjunction with the intimate content so as to convince online viewers of the authenticity of the Domain.

51. Plaintiff asserts that the Defendants knew or should have known that the intimate and revealing content and media posted onto the Domain and website were of a nature that would cause any person serious emotional distress if that person were the subject of the media.

52. Defendants committed the aforementioned acts with the intention and goal of causing the Plaintiff mental and physical harm and suffering, and irreparably damaging the Plaintiff's economic stability and professional reputation.

53. Defendants created, maintained, and used the Domain with the intention of exploiting the Plaintiff through cyber means, pursuant to Cal. Penal Code § 647, and will continue to exploit and cause the Plaintiff suffering without action and order by this Court.

## COUNT FIVE

### Intentional Infliction of Emotional Distress

54. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

55. Defendants' intentional and purposeful actions to violate numerous federal and California laws governing the Domain registration and website operations, and Plaintiff's privacy, constitute outrageous conduct.

56. Defendants knowingly and intentionally created the Domain to cause the Plaintiff to suffer severe emotional distress and economic loss by deliberately sharing private media and explicit content which would normally be expected to cause the subject of such media severe emotional distress.

57. Plaintiff has suffered severe emotional distress from the discovery of the Domain and the associated website content, including without limitation from the loss of employment which cited the Domain and associated website content as the primary justification for termination.

58. Defendants' actions, the Domain, and/or Defendants' websites are the proximate and actual cause of the Plaintiff's severe emotional distress as a result of the outrageous content in creating the Domain and fraudulent websites targeting Plaintiff's reputation.

59. Defendants' actions, domains, and/or websites have resulted in economic, emotional and other damages which are irreparable and will continue without action and order by the Court.

## COUNT SIX

### Negligent Infliction of Emotional Distress

60. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

61. Defendants have a duty under the aforementioned federal and state law claims, breach of which constitute negligent failure of those duties.

62. Defendants' actions in creating, supporting, and operating the Domain and/or Defendants' websites were the proximate and actual cause of the Plaintiff's damages alleged herein.

63. Defendants' actions, domains, and/or websites resulting in economic, emotional and other damages which are irreparable and will continue without action and order by the Court.

## COUNT SEVEN

### Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)

64. The allegations and claims set forth in all prior paragraphs are re-alleged and incorporated herein by reference.

65. As alleged in detail above, Defendants' use of Plaintiff's name, likeness and intimate photos without authorization, constitutes unlawful, unfair, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code Section 17200 et seq.

66. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' conduct in the form of damage to his reputation, loss of employment and severe emotional distress and other actual damages.

67. As a direct and proximate result of Defendants' wrongful acts as alleged in this Complaint, the Plaintiff's economical standing and professional career suffered severely.

68. Unless restrained, Defendants will continue their acts and conduct set forth in this Complaint, to Plaintiff's great and irreparable injury, for which damages will not afford adequate relief.  Plaintiff is therefore entitled to an injunction prohibiting Defendants' wrongful acts.

69. Defendants committed the wrongful acts willfully, intending to harm the Plaintiff's reputation and goodwill.  Defendants' conduct justifies an award of exemplary damages.

70. Upon proof, Plaintiff is entitled to recover his costs, including attorneys' fees, under California Code of Civil Procedure Section 1021.5.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment in his favor on each and every count set forth above and award him relief including, but not limited to, the following:

1. A Preliminary Injunction and Permanent Injunction requiring Defendants to immediately cease and desist in future from any use of the Plaintiff's name, likeness, or information in any domain names or websites, and requiring any third party domain name registries, registrars and/or web hosting companies with control over the Domain <coryliguore.com>, to disable that Domain and associated websites containing Plaintiff's name, likeness and/or intimate media;

2. Transfer of the Domain to Plaintiff;

3. A finding awarding Plaintiff statutory and any other monetary compensation for damages sustained by Defendants' wrongful actions as alleged in this Complaint;

4. An award of Plaintiff's reasonable attorneys' fees and expenses, and costs of this action; and,

5. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully request trial by jury as to all issues so triable.

Dated: March 15, 2024          RODENBAUGH LAW

By: /s/ Mike Rodenbaugh

Michael Rodenbaugh (SBN 179059)

*Attorneys for Plaintiff CORY LIGUORE*